Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Tuesday, March 30, 2010 12:58:25 PM**

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                    )
                                          )
RONALD A. WALKER, and                     )
DEBRA J. WALKER,                          )    Case No. 06-bk-00493
                                          )
        Debtors.                          )    Chapter 13
———————————————————                       )
                                          )
                                          )
RONALD A. WALKER, and                     )
DEBRA J. WALKER,                          )
                                          )
        Plaintiffs                        )
                                          )
v.                                        )    Adv. Proc. No. 08-ap-00011
                                          )
WELLS FARGO HOME MORTGAGE, INC.,          )
                                          )
        Defendant.                        )
———————————————————                       )

## MEMORANDUM OPINION

Ronald and Debra Walker (the "Debtors") allege that Wells Fargo Home Mortgage, Inc. ("Wells Fargo") violated the automatic stay of the Bankruptcy Code, other bankruptcy laws, and state and federal consumer protection laws by assessing charges to their mortgage note. Wells Fargo seeks a judgment on the pleadings for failure of the Debtors to state a claim upon which relief can be granted.

For the forgoing reasons, the court will grant in part and deny in part Wells Fargo's motion.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(h)(2)(B), as made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b), allows for a motion to dismiss for failure to state a

1

claim to be made, after the closing of pleadings, by a motion for judgment on the pleadings pursuant to Rule 12(c). The standard applicable to 12(h)(2)(B) motions is identical to the standard applied to pre-answer 12(b)(6) motions. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

The starting point for the notice-pleading standard in federal courts is Rule 8(a)(2), as made applicable to this proceeding by Fed. R. Bankr. P. 7008(b). Rule (8)(a)(2) requires a complaint to state a claim for relief by presenting "a short and plain statement of the claim showing that the pleader is entitled to relief."

In adjudicating a motion to dismiss for failure to state a claim, a court must accept as true all of the well-pleaded factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This principle, however, is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Defeating a motion under Rule 12(b)(6) requires the plaintiff to provide more in the complaint than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," *id.*, and be enough to "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949.

Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950. Dismissal on the pleadings is appropriate only if the complaint fails to plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" necessary for relief. *Twombly*, 550 U.S. at 555.

## II. BACKGROUND

Before filing their June 15, 2006 Chapter 13 bankruptcy petition, the Debtors owed Wells Fargo $ 33,314.68, secured by a first deed of trust against their principal residence.[1] The Debtors were in default under the note by $ 4,331.81. Wells Fargo received notice of the bankruptcy filing, and the Debtors proposed in their Chapter 13 plan to cure the existing default over the next sixty months, and to maintain their regular payments to Wells Fargo in the monthly

---

[1] The court will use the terms "deed of trust" and "mortgage" interchangeably throughout this opinion.

amount of $ 232.00 outside of their Chapter 13 plan.    Without receiving any objection from Wells Fargo, the Debtors' Chapter 13 plan was confirmed on March 9, 2007.

Despite confirmation of the Debtors' Chapter 13 plan, the Debtors failed to make their regular payments under the mortgage note to Wells Fargo.  In September 2007, Wells Fargo filed a motion seeking relief from the automatic stay so that it could seek to exercise its state law rights under the note and deed of trust on account of the Debtors' non-payment.  Wells Fargo asserted that the post-petition default on mortgage payments was $ 1,663.82, which included $ 30.00 in accrued late charges.  According to Wells Fargo, the Debtors had missed a total of six monthly payments from April 2007 to September 2007.

The Debtors objected to the motion on the grounds that Wells Fargo's calculation of the post-petition mortgage default was incorrect.  At a hearing on October 16, 2007, the Debtors' attorney reported that he believed the Debtors' ongoing mortgage payments were inappropriately applied to forced-place insurance.  Wells Fargo maintained that the default amount accrued due to an increase in the monthly mortgage payment based on an interest rate increase allowed by the Debtors' adjustable rate note.[2]

On a date not specified in the complaint, Wells Fargo provided an account statement to the Debtors.  The account statement provides the basis for the Debtors' allegation that Wells Fargo imposed "improper, unauthorized and unapproved post-petition fees and charges."  These allegedly inappropriate fees and charges are set forth in paragraph 23 of the Debtors' complaint: $ 31.60 for an escrow overdraft, $ 903.95 for a recoverable corporate advance, and $ 650.00 in attorney's fees and costs.  On January 28, 2008, the Debtors initiated this adversary proceeding, and final hearing on Wells Fargo's motion for relief from the automatic stay was continued pending the outcome of this litigation.

### III. DISCUSSION

The Debtors assert six claims for relief based upon receipt of Wells Fargo's account statement: (1) a violation of 11 U.S.C. § 362(a); (2) a violation of four provisions of the West Virginia Consumer Credit and Protection Act, W. Va. Code §§ 46A-2-125, 127(d), 127(g), and 128; (3) a violation of the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692p; (4)  violations of 11 U.S.C. §§ 105 and 506, and Fed. R. Bankr. P. 2016; (5)  a

---

[2] More specifically, Wells Fargo represented that the monthly payments for April and May 2007 were $ 312.05, and that the monthly payments from June to September 2007 were $ 259.93.

separate violation of 11 U.S.C. § 506; and (6) violations of Fed. R. Bankr. P. 2016 and 9011. The court will consider each in turn.

**A.    Count I: Automatic Stay Violation**

The Debtors' "First Claim" asserts that Wells Fargo's post-petition charges of $ 31.60 for an escrow overdraft, $ 903.95 for a recoverable corporate advance, and $ 650.00 for attorney's fees and costs are "improper, unauthorized, and unapproved fees and charges" to the Debtors' mortgage loan and constitute a violation of the automatic stay.

Wells Fargo argues that the Debtors' complaint fails to state a claim under § 362 of the Bankruptcy Code on the grounds that the fees and charges are listed in a transmittal of a payoff statement – sent to provide information that the Debtors needed in the administration of their bankruptcy case. In Wells Fargo's view, the mere providing of a payoff statement does not violate the automatic stay.

The automatic stay is codified at 11 U.S.C. § 362(a). Subparagraphs (3) and (6) are relevant to the Debtors' complaint. Subparagraph (3) provides that a bankruptcy petition "operates as a stay . . . of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Subparagraph (6) applies to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). In the event the stay under subsection (a) is violated, subsection (k) provides that "an individual injured by any willful violation of a stay provided by this section shall recover" actual and punitive damages.[3]  11 U.S.C. § 362(k).

**1.    § 362(a)(6) – Collection of Pre-petition Claims Against the Debtor**

While post-petition demand letters and collection phone calls regarding pre-petition debts are blatant violations of § 362(a)(6), *e.g.*, *In re Lukach*, Case No. 805-89014-478, 2007 Bankr. LEXIS 1631 (Bankr. E.D.N.Y. May 8, 2007), not *all* post-petition contacts between a creditor and a debtor in bankruptcy violate the stay. *See, e.g.*, *Saylor v. Select Portfolio Servicing, Inc.*

---

[3] To be sure, a motion seeking relief from the stay is authorized under § 362(d) of the Bankruptcy Code; therefore, such a motion cannot violate the automatic stay. *U.S. v. Inslaw, Inc.*, 832 F.2d 1467, 1474 (D.C. Cir. 1991) (". . . [C]ourts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code . . . ."), *cert. denied*, 502 U.S. 1048 (1992); *Newcomer v. Litton Loan Servicing, L.P. (In re Newcomer)*, 416 B.R. 166, 178 (Bankr. D. Md. 2009) (rejecting argument that a filing of a motion for relief from stay violates the stay).

*(In re Saylor)*, Case No. 07-cv-229, 2008 U.S. Dist. LEXIS 44887 (M.D. Ala. June 9, 2008) (response to a "qualified written request" under RESPA); *Pultz v. Novastar Mortgage, Inc. (In re Pultz)*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) ("The automatic stay does not bar a lender from notifying a debtor of an escrow deficiency or from making other notification[s] that are required by RESPA."); *Connor v. Countrywide Bank N.A. (In re Connor)*, 366 B.R. 133, 135 (Bankr. D. Haw. 2007) (negotiation of a reaffirmation agreement under § 524(c)).

Whether sending an account statement or notification violates the stay "all depends on the context," *In re Connor*, 366 B.R. at 133, and, in assessing the context, courts have applied an "informational purposes" standard. Under that standard, the court must consider "what type of communication was sent to the [Debtors] and whether the communication had a purpose other than collection of the debt outside the scheme contemplated by the Bankruptcy Code." *Cousins v. CitiFinancial Mortgage Company (In re Cousins)*, 404 B.R. 281, 286 (Bankr. S.D. Ohio 2009) (citing *In re Connor*, 366 B.R. at 136-137).

Taking as true the well-pleaded facts in the Debtors' complaint, the Debtors have established only that Wells Fargo sent a "payoff" statement that included "improper, unauthorized and unapproved post-petition fees and charges." (Amended Complaint, ¶ 23.) The payoff statement is not attached to the complaint, but Wells Fargo attached in its motion what it avers is the payoff statement referred to in the complaint. (Doc. No. 45, Ex. A.) The court may consider the payoff statement "in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the [Debtors] do not challenge its authenticity." *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

In this case, the act of transmitting the payoff statement is not grounds for recovery under § 362(k). The statement is dated January 11, 2008, which is during a time when Wells Fargo's motion for relief from stay was being contested. (Doc. No. 45, Ex. A, 1.) The statement notes that it is a response to a request for a payoff statement. Moreover, at page 6 of their Response to Wells Fargo's motion for judgment on the pleadings, the Debtors admit that they "did not assert that Wells Fargo violated the automatic stay when it provided a mortgage payoff to [the Debtors]." (Doc. No. 60, at 6.) The court can find no other act by Wells Fargo that can be construed as a collection effort in violation of § 362(a)(6).

### 2.    § 362(a)(6) – Assessment of Pre-petition Claims Against the Debtor

Instead of the mere presentment of a payoff statement, the Debtors assert that the basis for the stay violation is Wells Fargo's *assessment* of unauthorized charges to their account. (Pl.'s Response, 6.)

Section 362(a)(6) stays only the post-petition assessment of pre-petition claims. Here, the complaint alleges that Wells Fargo made inappropriate post-petition assessments. Thus, the complaint presents an ambiguity as to whether the post-petition assessments against the Debtors are for charges that arose pre-petition. In ruling on a motion for judgment on the pleadings, the court must draw all inferences from well-pleaded facts in favor of the Debtor. Because it is plausible under the facts alleged that the charges assessed post-petition arose pre-petition, the court must deny Wells Fargo's motion for judgment on the pleadings on the Debtors' cause of action for assessment of charges under § 362(a)(6).

### 3.    § 362(a)(3) – Collection from Estate Property

Section 362(a)(3) is also relevant to the Debtors' stay violation claim. A claim for a violation of § 362(a)(3) requires a showing that a creditor committed an "act to obtain possession of . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Here, the Debtors allege that the account statement that they obtained from Wells Fargo shows charges that they find objectionable. They have not alleged that Wells Fargo diverted plan disbursements or current coupon payments to a purpose in contravention of the plan, confirmation order, or the Bankruptcy Code. The refrain in each claim of the complaint is that Wells Fargo has *imposed* or *charged* fees to the Debtors' account. The allegation that Wells Fargo charged the Debtors' account with unlawful fees is not an allegation that establishes an element of a § 362(a)(3) violation. *E.g., Mann v. Chase Manhattan Mortg. Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003) ("[T]he [debtors'] property, presently revested in them following the confirmation of their Chapter 13 plan, remains unaffected by the internal bookkeeping entries initiated by Chase."); *In re Saylor*, 2008 U.S. Dist. LEXIS 44887, at *10-11 ("Merely recording an amount owed as a bookkeeping entry does not constitute an act that violates the automatic stay.").

Because the Debtors' complaint fails to allege facts sufficient to show a violation of § 362(a)(3) and fails to allege that Wells Fargo undertook collection efforts under § 362(a)(6), the court will grant Wells Fargo's motion for judgment on the pleadings as to the Debtor's cause of action under § 362(a)(3) and for collection of pre-petition claims under § 362(a)(6). As for the

6

Debtors' cause of action under § 362(a)(6) for the assessment of pre-petition claims, the court will deny Wells Fargo's motion for judgment on the pleadings.

**B.    Count II: West Virginia Consumer Credit and Protection Act Violations**

The Debtors' Second Claim alleges that Wells Fargo violated the West Virginia Consumer Credit and Protection Act ("CCPA") by charging their mortgage account for $ 31.60 for an escrow overdraft, $ 903.95 for a recoverable corporate advance, and $ 650.00 in attorney's fees and costs after the petition date. Wells Fargo argues that the Debtors fail to state a claim, on the grounds that this court has previously held that such claims are preempted by the federal rights afforded to debtors for violations of the automatic stay. The court raises, *sua sponte*, whether it has subject matter jurisdiction to hear causes of actions for CCPA violations that occur after confirmation, and concludes that it does not.

**1.    Federal Preemption**

This court has ruled that "causes of action alleged under the [CCPA], that attempt to govern the same activity regulated by the Bankruptcy Code 'imbricate the remedies provided by the Bankruptcy Code, [and], as applied, are preempted under the Supremacy Clause of the United States Constitution.'" *Robb v. Nat'l Tree Co. (In re Robb)*, 399 B.R. 171, 174 (Bankr. N.D. W. Va. 2008) (quoting *Johnston v. Telecheck Services, Inc. (In re Johnston)*, 362 B.R. 730, 736 (Bankr. N.D. W. Va. 2007) (preempting W. Va. Code §§ 46A-2-124(c) and 46A-2-127(d))); *see also, e.g., Johnston v. Valley Credit Services, Inc. (In re Johnston)*, Case No. 06-ap-180, 2007 Bankr. LEXIS 1174, *2 (Bankr. N.D. W. Va. April 12, 2007) (ruling that the conclusion in the case of *In re Johnston*, 362 B.R. 171, that W. Va. Code § 46A-2-124(c) is preempted by the Bankruptcy Code requires the same conclusion as to § 46A-2-124(f)).

The court's prior holdings that the Bankruptcy Code preempts certain provisions of the CCPA are applicable, here, only insofar as the Debtors seek a remedy under the CCPA for conduct governed by the Bankruptcy Code. Sections 362(a)(3) and (6) *apply* to Wells Fargo's transmittal of the payoff statement – even though the transmittal did not *violate* those provisions, because the debtor requested the statement. Likewise, as discussed above, § 362(a)(6) *applies* to the post-petition assessment of pre-petition charges against the Debtors. Thus, to the extent the Debtors seek remedies under the CCPA for the transmittal of the payoff statement or the assessment of pre-petition charges, their CCPA causes of action are preempted by the automatic stay. The automatic stay, however, does not preempt the Debtors' CCPA claims insofar as the

CCPA governs the charging of post-petition fees to their account, because the automatic stay under § 362(a)(6) does not apply to such assessments.

Other Bankruptcy Code provisions, however, govern the charging of post-petition fees. From the petition date to confirmation, § 506(b) of the Bankruptcy Code allows oversecured creditors to accrue to their secured claim, the fees allowed by contract. *Rake v. Wade*, 508 U.S. 464, 468 (1999). The Fourth Circuit interprets § 506(b) as allowing fees despite the fact that state law prohibits the fee, as long as the fee is part of the security agreement. *Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast, Inc. (In re K.H. Stephenson Supply Co.)*, 768 F.2d 580 (4th Cir. 1985); *cf. Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 851 n.8 (4th Cir. 1999) (distinguishing between the intent to displace state law under § 506(b) and the lack of such intent under § 365).

Here, while the Debtors allege that "post-petition" fees were charged to their account, they do not delineate the fees that accrued post-confirmation. Thus, to the extent those fees were charged before confirmation, § 506(b) preempts the CCPA, because the Fourth Circuit has ruled that congress intended to displace state law governing the fees a secured creditor can include in its claim in a bankruptcy case. Whether Wells Fargo is entitled to the fees as part of its claim, depends upon whether Wells Fargo was an oversecured creditor under § 506(a). Therefore, even if Wells Fargo was, in fact, not oversecured at the time it charged the fees, the Bankruptcy Code, nevertheless, displaces state law in the area of post-petition, pre-confirmation charges to secured claims.

### 2.    Bankruptcy Subject Matter Jurisdiction

To the extent the fees were charged post-confirmation, the bankruptcy claim provisions of the Bankruptcy Code do not preempt the CCPA. Instead, the issue is whether a CCPA cause of action that occurred post-confirmation has any affect on the administration of the bankruptcy case.

By order of reference from the district courts, bankruptcy courts have subject matter jurisdiction over all cases under title 11 and all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a) & (b), 157(a).

A proceeding arises under title 11 where either bankruptcy law creates the relief sought or the right to relief necessarily depends on resolution of a substantial question of bankruptcy law. *Poplar Run Five Ltd. P'ship v. Va. Elec. & Power Co. (In re Poplar Run Five Ltd. P'ship)*,

192 B.R. 848, 855 (Bankr. E.D. Va. 1995) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)); *accord Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 98 (S.D.W. Va. 2009) ("[A] proceeding [arises under title 11 or arises in the bankruptcy case] . . . if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

Proceedings "arise in" the bankruptcy case when the proceedings "are not based on any right expressly created by [t]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. P'ship v. The Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007).

Here, the Debtors' causes of action for violations of the CCPA that occurred after confirmation neither arise under title 11 nor arise in a case under title 11, because the relief the Debtors seek under the CCPA requires no resolution of federal bankruptcy law and exists independently of the bankruptcy case.

Although a proceeding does not arise in a bankruptcy case or arise under title 11, the court retains subject matter jurisdiction over the proceeding as long as it relates to the bankruptcy case.  28 U.S.C. § 1334(b).  To determine whether a proceeding relates to a bankruptcy case, the Fourth Circuit has adopted the "conceivable effects" test as articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  *See Valley Historic Ltd. P'ship*, 486 F.3d at 835.

A proceeding relates to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.*  Furthermore, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.*; *see also Spiers Graff Spiers v. Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1006 (Bankr. N.D. Ill. 1996) (holding that a dispute does not relate to the bankruptcy case where the dispute "does not involve property of the estate, does not affect the administration of the estate, and resolution of [the] dispute will not affect recovery of creditors").

Likewise, a proceeding that does affect the property of the bankruptcy estate, nevertheless, relates to the bankruptcy case as long as it has a conceivable bankruptcy administration purpose. *Id.* at 836.  The essential inquiry is "whether there is a close nexus to

9

the bankruptcy . . . proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.*

Here, the CCPA claims can have no effect on the administration of the Debtors' bankruptcy case to the extent the claims arose after confirmation. The court's confirmation order now controls the rights of Wells Fargo and the Debtors. 11 U.S.C. § 1327(a). Under that order, Wells Fargo is entitled to retain its lien and receive from the Debtors ongoing coupon payments on the deed of trust note. (Case No. 06-bk-00493, Doc. No. 45, ¶ 3(a) & (b).) State law controls Wells Fargo's entitlement to post-confirmation fees allowed under the deed of trust note. As for any recovery for damages based on violations of state law since confirmation, the Debtors are entitled to any property of the estate not committed to the plan. 11 U.S.C. § 1327(b).[4] Therefore, any recovery available under the CCPA would be recovered by the Debtors, not the estate. The court can find no effect that Debtors' post-confirmation CCPA claims could have upon the outcome or administration of the Debtors' bankruptcy case.

## C.    Count III: Fair Debt Collection Practices Act Violations

The Debtors' Third Claim asserts damages for violations of the FDCPA. Wells Fargo, argues that the Debtors cannot state a claim under the FDCPA on the basis that the FDCPA does not apply to it.

Section 1692d of the FDCPA, 15 U.S.C. § 1692d, prohibits "debt collectors" from engaging in certain acts. To establish a violation of the FDCPA, the plaintiff must show that the defendant is a debt collector as that term is defined in the FDCPA.

The FDCPA defines "Debt Collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Specific exclusions from the definition include

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor. . .

. . . .

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a

---

[4] Although, in this District, the typical Chapter 13 plan confirmation order revests property in the debtor at completion of the plan, in this case, the Debtors' plan (Case No. 06-bk-00493, Doc. No. 8) at paragraph 11 follows the general rule under § 1327(b) by providing that "property shall revest in debtor on confirmation" and the confirmation order is silent as to when estate property revests. Therefore, here, property of the estate revested in the Debtors upon confirmation.

bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6)(A) & (F).

The term "creditor" means:

any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4).

Under § 1692a(6)(F)(iii), mortgage service companies are not debt collectors, as long as the company began servicing the loan before the loan was in default. *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003), *aff'd*, 67 Fed. Appx. 238 (4th Cir. 2003) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (upholding directed verdict that the originating mortgagee who continued to service the loan after it assigned the note to another person was not a debt collector because it was a "mortgage servicing company")); *accord Robbins v. Mortgage Elec. Registration Sys.*, No. 1:09-CV-295, 2009 U.S. Dist. LEXIS 104101, *13-14 (W.D. Mich. Nov. 9, 2009) (clarifying that *Scott* and *Perry* do not hold that a mortgage company is categorically exempt, but, rather, it is exempt, only if the loan was not in default at the time the company began servicing the loan); *cf. Oppong v. First Union Mortg. Corp.*, 215 Fed. Appx. 114, 118 (3rd Cir. January 26, 2007) ("This definition of 'debt collector' excludes creditors who attempt to collect their own debts, but does not exclude an entity in Wells Fargo's position who has acquired a debt that was already in default."). Moreover, courts have held that the original mortgagee who services the loan and then assigns the loan to another person, but remains the service company, is not a debt collector, even if the loan was in default before the original mortgagee/servicer assigned the note. *Oppong v. First Union Mortg. Corp.*, No. 02-2149, 2003 U.S. Dist. LEXIS 23722, *8-9 (E.D. Pa. Dec. 29, 2003), *aff'd in part, vac'd in part,* 112 Fed. Appx. 866 (3d Cir. Pa. 2004) (affirming the cited holding).

Here, the Debtors argue that their FDCPA cause of action should withstand judgement on the pleadings, and that they should be allowed to conduct discovery to determine whether Wells Fargo "is the true owner of the note." Wells Fargo's purported lack of ownership of the note,

however, does not carry the day for the Debtors. Instead, if it is shown that Wells Fargo originated the note, and continued to service the loan, then it is not a debt collector under 15 U.S.C. § 1692a(6), even if the note had been assigned or transferred to another person. *See Oppong*, 215 Fed. Appx. at 118-19.

The note attached to Wells Fargo's proof of claim is dated December 12, 2003, and that note names Wells Fargo as the lender, and requires the borrower to make monthly payments to Wells Fargo. Further, the Debtors' complaint alleges that Wells Fargo is "engaged in the business of real estate mortgage servicing" and that their "Chapter 13 plan as confirmed included a debt to Wells Fargo." Based on the record in this case, no inference exists that Wells Fargo is a debt collector subject to the FDCPA.

**D.    Counts IV-VI: Bankruptcy Law Violations**

The Debtors' Fourth, Fifth and Sixth Claims allege that Wells Fargo's failure to provide disclosures and/or obtain court approval of their charges violated Bankruptcy Code section 506(b) and Rules 2016 and 9011 of the Federal Rules of Bankruptcy Procedure. Wells Fargo argues that § 506(b) and Rule 2016 do not create private rights of action, and the Debtors have failed to comply with the safeharbor provision under Rule 9011. The court agrees.

For a federal private right of action to exist, Congress must create it. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979); *Miller v. GE Capital Mortg. Serv. (In re Miller)*, 124 Fed. Appx. 152, 153 (4th Cir. 2005). Legislation may create a private right of action, implicitly or explicitly. *In re Miller*, 124 Fed. Appx. at 153. The Supreme Court set forth four factors in *Cort v. Ash*, 422 U.S. 66, 78 (1975) to determine if a private right of action exits: (1) plaintiff must be part of the intended beneficial class, (2) legislative intent to create a remedy, (3) the remedy is consistent with the statute's underlying purpose, and (4) principles of federalism do not militate against a federal cause of action. The Supreme Court, since *Cort*, however, has ruled t hat, failure of the second factor is determinative. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (citations omitted).

To determine whether a federal statute creates a private right of action, the court must "look to the statutory text for 'rights-creating' language." *In re Miller*, at 153 (quoting *Sandoval*, at 288). As *Sandoval* made clear, the Court, after *Cort*, "swore off the habit of venturing beyond Congress's intent," to "provide remedies as are necessary to make effective the congressional purpose." 532 U.S. at 287 (internal quotes omitted).

1.      **§ 506(b)**

Nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure suggests that Congress intended a private right of action to lie in § 506(b), which provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

In effect, § 506(b) grants holders of over-secured claims a right to include in the total value of their claim, interest and other charges. Section 506(b) is only applicable from the date of the petition to the date of confirmation of a Chapter 13 plan. *Rake v. Wade*, 508 U.S. 464, 468 (1999). The only rights-creating language in § 506(b) is the language stating "there shall be allowed to the holder of such claims," which entitles over-secured creditors to include additional fees and charges to their mortgage loan. The language of § 506(b) grants no right to a bankruptcy debtor other than to object to the inclusion of a lenders fees and charges as not meeting the criteria as set forth in § 506(b). No provision of § 506(b) allows a debtor a remedy for fees and charges that are purportedly unauthorized and illegal under applicable state law. In fact, lenders are entitled to recover fees and charges under § 506(b) even when those fees or charges are not allowed under state law as long as the underlying loan agreement provides for such recovery. *In re K.H. Stephenson Supply Co.*, 768 F.2d at 585.

2.      **§ 105(a)**

Likewise, the Debtors' reliance on § 105(a) to provide them with a remedy for Wells Fargo's imposition of allegedly unauthorized fees and charges under state law is misplaced. While the court's powers under § 105(a) allow it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," it can apply those powers only in a "manner consistent with the Code." *Joubert v. ABN Mortg. Group, Inc. (In re Joubert)*, 411

13

F.3d 452, 455 (3d Cir. 2005) (internal quotation marks omitted).   Section 105(a) does not "give the court the power to create substantive rights that would otherwise be unavailable under the Code."  *Id.*  Section 105(a) "powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules,"  *Official Committee of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987), and is not a "roving commission to do equity," *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986).

Here, the Debtors invoke the powers under § 105(a) in conjunction with their claim for relief under § 506(b).  Because the court finds that § 506(b) creates no private right of action, the court cannot "bootstrap private causes of action from Bankruptcy Code provisions" under the guise of § 105(a).  *In re Joubert*, 411 F.3d at 456 n.3.

### 3.   Bankruptcy Rule 2016(a)

The Debtors' Fourth and Sixth Claims allege violations of Rule 2016(a), which  provides:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. . . . The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity.

Fed. R. Bankr. P 2016(a).  The Complaint alleges that Wells Fargo "charg[ed] post-petition legal fees and expenses . . . without any prior notice or Court approval."

However, no inference exists in this case that Wells Fargo was seeking compensation for services or reimbursement for necessary expenses from the estate.  Wells Fargo did not file a post-petition claim under 11 U.S.C. § 1305, it did not seek modification of the Debtors' confirmed plan, it did not seek to increase the Debtors' Chapter 13 plan payments to satisfy the imposition of the post-petition fees and charges, and it did not seek to dismiss the Debtors' case on the grounds that the Debtors were not complying with their direct-pay obligations under the confirmed plan.  Instead, all Wells Fargo did was impose fees and charges to the Debtors' mortgage account.  Without seeking compensation or reimbursement from the estate, Rule 2016 is not applicable, and does not provide the Debtors with a remedy.

Moreover, a Chapter 13 debtor has the absolute right to dismiss under § 1307(b), and Wells Fargo must be allowed to prepare for that contingency by accounting for its state law

entitlements, post-dismissal.  Upon dismissal, the secured creditor becomes free from the stay and allowed to assert any state law rights that accrued since the petition.  The court cannot construe the accounting of contractual rights under state law as seeking payment from the estate. As long as the mortgagee is not demanding immediate payment from the estate, which has not been alleged, here, no further notice is required.

### 4.   Bankruptcy Rule 9011

The Debtors' allegations of Rule 9011 violations cuts to the heart of their complaint. They allege that they have been required to litigate, what they assert is a baseless lift-stay motion.  In the context of that contested matter, Rule 9011 may have provided a remedy against Wells Fargo's allegedly frivolous motion, but their complaint does not show that they followed the safe-harbor provisions – a failure that is fatal to any possible relief under Rule 9011. Specifically, Rule 9011(b) provides:

> By presenting to the court . . . a . . . written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).  The sanctions for violating Rule 9011(b), can include the payment of attorneys fees for bringing a motion for sanctions against a party for violating the Rule.  Before a motion for sanctions is filed, the movant must comply with the 21-day safeharbor provision under Rule 9011(c):

> The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may

15

> prescribe), the challenged paper, claim, defense, contention, allegation, or denial
> is not withdrawn or appropriately corrected. . . .

Fed. R. Bankr. P. 9011(c)(1)(A).

The "service" referred to in Rule 9011(c) must comply with the formal service requirements of Rule 7004. Fed. R. Bankr. P. 9011(c)(1)(A).

Here, the Debtors' complaint for the violation of Rule 9011 fails to allege that the Debtors served a formal Rule 9011 motion on Wells Fargo or otherwise complied with the safe-harbor provision. The Debtors merely allege that their attorney made calls and sent letters to Wells Fargo, indicating his disagreement with the charges on the account. The procedural requirements of Rule 9011 are straight forward and strict. No fact in the Debtors' complaint establishes that the procedural requirements were met for the court to impose sanctions against Wells Fargo under Rule 9011.

Therefore, the Debtors' complaint for Rule 9011 sanctions fails to state a claim for which relief can be granted, and Wells Fargo's motion for judgment on the pleadings shall be granted as to the Sixth Claim.

## IV. CONCLUSION

Because the Debtors have alleged facts that set forth a plausible right to relief under § 362(k) on the theory that certain charges were assessed against the Debtors in violation of § 362(a)(6), the court will deny in part Wells Fargo's motion for judgment on the pleadings as to the Debtors' First Claim. However, the court grants in part Wells Fargo's motion for judgment on the pleadings as to the Debtors' First Claim with respect to the Debtors' causes of action for collection efforts taken in violation of §§ 362(a)(3) and (6), because none of the alleged acts by Wells Fargo could be construed as collection efforts.

The Second Claim fails to state a claim for relief, because the Bankruptcy Code preempts CCPA damages for post-petition, pre-confirmation charges, and the court has no subject matter jurisdiction to adjudicate CCPA damages for post-confirmation charges. The Third Claim fails to state a claim, because the FDCPA does not apply to Wells Fargo in this case. The Fourth and Fifth Claims fail to state a claim because no private right of action is granted under § 506(b), § 105(a) or Rule 2016(a). The Sixth Claim fails to state a claim because the Debtors have not shown that they complied with the safeharbor provisions of Rule 9011.

Pursuant to Rule 7058, the court will enter a separate order consistent with this memorandum opinion.